UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DISCOVER BANK,**

      **Plaintiff,**        Case No. 2:03-cv-686
                                        JUDGE GREGORY L. FROST
      v.                                  Magistrate Judge Mark R. Abel

**NEW VISION FINANCIAL, LLC,**

      **Defendant.**

### OPINION AND ORDER

This matter comes before the Court for consideration of a motion for partial summary judgment (Doc. # 49) filed by Plaintiff, Discover Bank, and a motion for partial summary judgment (Doc. # 52) filed by Defendant, New Vision Financial, LLC. Discover Bank also moves the Court for leave to amend its complaint and to reopen discovery. (Doc. # 49.) For the reasons that follow, the Court **GRANTS IN PART** Discover Bank's motion for partial summary judgment (Doc. # 49), **DENIES** New Vision's motion for partial summary judgment (Doc. # 52), and **GRANTS** Discover Bank's requests for leave to amend its complaint and to reopen discovery (Doc. # 49).

### I. Background

New Vision Financial, LLC ("New Vision") is a Georgia corporation that purchases delinquent credit card accounts for subsequent collection. Discover Bank is a Delaware corporation with offices in Hilliard, Ohio that routinely sells delinquent accounts. Following

1

discussions between Discover Bank and a company known as Enhanced Asset Management, which was acting on behalf of New Vision, the parties to this litigation entered into an agreement in January 2001 in which New Vision would purchase delinquent credit card accounts from Discover Bank at a rate of 9.28% of the balance of the accounts. The agreement was for one year with an automatic renewal unless either party terminated the agreement via written notice sixty days prior to renewal.

The relationship between the parties deteriorated within three months. According to New Vision, Discover Bank's placement manager had represented to New Vision during negotiations that Discover Bank would sell the credit card accounts without engaging in adverse selection, a procedure in which Discover Bank would hand off carefully selected, less-than-desirable accounts to New Vision. New Vision contends, however, that Discover Bank was not only engaging in adverse selection, but that the company admitted it in a May 14, 2001 communication to Enhanced Asset Management. As a result of improper selection procedures, New Vision contends, Discover Bank was intentionally selling high-balance accounts instead of random accounts; it is apparently more difficult to collect on high-balance accounts.

As an outgrowth of discussions between the parties, New Vision and Discover Bank executed amendments to their initial agreement three times, once on October 1, 2001, once on February 8, 2002, and once on July 10, 2002. These amendments altered several specific terms of the account purchase agreement, but left unchanged and in full effect all agreement provisions not specifically altered via amendment.

New Vision's collection problems allegedly continued. The company asserts, for example, that Discover Bank had begun to sell New Vision an unusual number of accounts in

which the debtor had obtained legal representation, which complicates collection procedures and, depending upon the collection procedures employed, can lead to violations of the Fair Debt Collection Practices Act.  New Vision also contends that the accounts it received contained a disproportionate number of Texas and Florida accounts, which are more difficult to collect due to state law.

New Vision did not purchase any accounts in February, March, April, and May 2002.  New Vision then purchased accounts for June through October 2002, did not make any purchases for November 2002, and then again purchased some accounts–but $10.2 million less than required–in December 2002.  After New Vision declined to purchase any accounts for the first three months of 2003, Discover Bank terminated the parties' agreement as of April 1, 2003.

Discover Bank subsequently filed this action on July 30, 2003.  Following an unsuccessful attempt at dismissing or transferring the action, New Vision filed an answer in which it asserted the following five counterclaims: fraud/intentional misrepresentation, fraud in the inducement, fraud and deceit, negligent misrepresentation, and unjust enrichment.  Discover Bank responded by filing a motion to dismiss New Vision's affirmative defenses and the foregoing counterclaims; Discover Bank also sought judgment on the pleadings on the issue of liability.  In a July 30, 2004 Opinion and Order, the Court dismissed New Vision's fraud and misrepresentation-related counterclaims and corresponding defenses, as well as the counterclaim for unjust enrichment.  The Court also denied the motion for judgment on the pleadings.

Following the completion of discovery, both sides have now filed motions for summary judgment.  (Docs. # 49, 52.)  Discover Bank has also moved to amend its complaint to assert additional claims against new parties, with a consequent request to reopen discovery.  The

parties have completed briefing the issues involved, and the motions are now ripe for disposition. Although there has been a request for oral argument, the Court has determined that such argument would be neither helpful nor essential to the fair resolution of the case given the issues involved. Accordingly, the Court shall proceed to decide the motions based upon the memoranda and evidence filed. *See* S.D. Ohio Civ. R. 7.1.

## II. Motions to Amend Complaint and Reopen Discovery

Discover Bank moves under Federal Rule of Civil Procedure 15(a) to amend its complaint to assert alter ego, fraudulent transfer, and successor liability claims against New Vision shareholders Fred and Shelly Howard, Titan Recovery, and Titan Management. Rule 15(a) provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." As New Vision correctly point out in its memorandum in opposition, the policy favoring liberal amendment embodied in the Rule is not absolute. Rather, "leave to amend is properly denied where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.' " *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

New Vision asserts that Federal Rule of Civil Procedure 16(b) also affects Discover Bank's request to amend its pleading. Rule 16(b) provides for the entry of an order setting forth the case schedule, which "shall not be modified except upon a showing of good cause and by leave of the district judge." The Sixth Circuit has explained that both Rule 16(b) and 15(a)

4

govern a motion to amend the complaint filed after the issuance of a scheduling order. *Russell v. GTE Gov't Sys. Corp.*, No. 04-3437, 2005 WL 1579718, at *6 (6th Cir. July 6, 2005) (citing *Dyer v. Casey*, No. 94-5780, 1995 WL 712765, at *3 (6th Cir. Dec. 4, 1995) (per curiam). Therefore, "once a scheduling order's deadline passes, a party must first show good cause under Rule 16(b) for the failure to seek leave to amend prior to the expiration of the deadline before a court will consider whether the amendment is proper under Rule 15(a)." *Hill v. Banks*, 85 Fed. Appx. 432, 433 (6th Cir. 2003).

Relying on Rule 16(b)'s good cause provision, New Vision argues that Discover Bank lacks good cause to permit the Court to undertake a Rule 15(a) analysis. New Vision points to the July 30, 2004 e-mail regarding Titan Recovery Group that Discover Bank received and the fact that the agreed-upon proposed September 2004 deadline for amending the pleadings had passed to argue that Discover Bank has unreasonably delayed in seeking amendment. Discover Bank responds in part by asserting that because the September 2004 deadline never became the order of the Court, only Rule 15(a) governs.

Review of the docket indicates that on May 12, 2004, the parties submitted a joint Rule 26(f) report in which they recommended a September 1, 2004 cut-off date for amendment of the pleadings. (Doc. # 33, at 2.) It does not appear either that the Magistrate Judge ever adopted this date via journalized order or that subsequently filed scheduling orders incorporated the date. (Docs. # 39, 40.) On August 27, 2004, however, the Magistrate Judge entered a scheduling order in this case that set various discovery deadlines and a dispositive motion filing deadline of March 1, 2005. (Doc. # 39.) The Court then issued an additional scheduling order on September 9, 2004 that established additional deadlines, as well as repeating the summary judgment

5

deadline.  (Doc. # 40.)  Given the foregoing, Discover Bank's March 1, 2005 request to amend its complaint comes six months after the proposed deadline for such amendment and well after the passage of numerous other deadlines.  The request for additional discovery is similarly well after the various discovery deadlines.

Complicating the issue is that Discover Bank did pursue discovery about the Titan enterprise that, following resistance, culminated in a January 2005 discovery order by the Magistrate Judge permitting additional narrow discovery.  Although this discovery ultimately appeared to be of limited help to Discover Bank, the discovery apparently confirmed its suspicions sufficiently so that the company could assert claims against the three parties it seeks to add in good faith.  The period of delay between the date this discovery was obtained, January 25, 2005, and the March 1, 2005 request to amend is fairly inconsequential.  Thus, even assuming that Rule 16(b) does apply here, the Court finds that Discover Bank has demonstrated good cause for moving to amend and to reopen discovery after the expiration of the scheduling order dates.

The Court shall therefore proceed under Rule 15(a).  There is no apparent undue delay, bad faith or dilatory motive on the part of Discover Bank here.  There are also no repeated failures to cure deficiencies by amendments previously allowed.  The two central issues are therefore whether the amendment would cause undue prejudice to the opposing party and whether amendment would be futile.

Any prejudice to New Vision or the parties to be added is necessitated in part by their own conduct.  Moreover, the Court shall adjust the trial schedule so as to obviate any prejudice, thereby affording the parties due time to fully prepare and litigate this case.  The Court further

finds that the effect of altering the trial schedule imposes a slight burden on the Court's trial calendar that the Court can and will absorb.  The Court also finds that Discover Bank has presented a compelling argument as to why the proposed amendments would not be futile.  Although the Howards, Titan Recovery, and Titan Management may ultimately prevail on the claims against them, there is a sufficient basis at this juncture as set forth in the analysis and argument presented by Discover Bank to permit those claims to proceed.  The Court thus concludes that the interests of justice support amendment and additional discovery and **GRANTS** Discover Bank's request to amend its pleading and to reopen discovery.  (Doc. # 49.)

### III.  Summary Judgment Motions

**A.  Standard Involved**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court must therefore grant a motion for summary judgment here if Gregg, the nonmoving party who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case.  *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of Gregg, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact

exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52.)

**B. Analysis**

Discover Bank moves for summary judgment only on the issue of liability for breach of contract after the July 2002 amendment. The company asserts that under Delaware law,[1] New Vision breached the amended contract by failing to purchase accounts for November 2002 through March 2003 (recognizing the partial exception of an insufficient purchase in December 2002) and for a purported renewal period from March 2003 until March 2004. New Vision in turn opposes Discover Bank's motion and itself moves for partial summary judgment on Discover Bank's seeking mitigation damages and lost profits[2] on the grounds that (1) Discover Bank has failed to demonstrate that it incurred any damages, (2) Discover Bank failed to act reasonably in mitigating any damages, (3) Discover Bank is equitably estopped from claiming

---

[1] Unlike in the earlier motion to dismiss proceeding involving alleged fraud and issues of equity, Ohio law does not apply to the issues *sub judice*. (Doc. # 24, at 15 n.5; Doc. # 31, at 5.) As the parties agree, Delaware law applies here pursuant to the parties' contract. *See Muglia v. Kaumagraph Corp.*, 64 F.3d 663, 1995 WL 492933, at *3 (6th Cir. 1995) (unpublished table decision) (explaining that under choice of law analysis, law of place of injury applied to tort claims and claims arising in equity, while contract's terms dictated that Delaware law applied to claims involving contract interpretation).

[2] Discover Banks asserts that it is seeking contractual "cover" damages pursuant to Section 3.5 of the parties' agreement . (Doc. # 68, at 6.)

damages because it acquiesced to New Vision's purchasing pattern, and (4) the parties' contractual obligation was illusory because their agreement lacked mutuality of obligation. Because each party has incorporated its arguments for and against summary judgment in their briefing, the Court shall discuss their motions together while keeping in mind the parties' respective burdens and the different view of the evidence a moving and non-moving party enjoy.

To prevail on its claim, Discover Bank must prove that a contractual obligation existed, that New Vision breached that obligation, and that Discover Bank suffered resulting damages. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003); *H-M Wexford LLC v. Encorp., Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003).  The Court shall address each element in turn.

It is undisputed that New Vision failed to purchase the requisite accounts since November 2002; New Vision admitted as much in its Answer. (Doc. #19, at 4 ¶ 16.) What is disputed is whether a valid contractual obligation existed and, if so, what constitutes the length of that agreement.

New Vision argues that no valid contract existed post-July 2002 because that month's amendment granted Discover Bank unfettered discretion to sell or not to sell accounts to New Vision on a monthly basis. New Vision also notes that the agreement enabled Discover Bank to terminate the parties' relationship without cause and at any time, simply by sending a timely written notice 90 days prior to termination. Discover Bank has responded by asserting that the pre-amendment agreement originally contained mutual obligations and that consideration existed for the July 2002 amendment because Discover Bank relinquished its right to pursue damages related to New Vision's prior breaches and because it agreed to accept a lower price for future

accounts.

In regard to Discover Bank's discretion to sell or not to sell accounts, the Court concludes that a valid contract existed based on Discover Bank's reading of *Williams Natural Gas Company v. Amoco Production Company*, No. 11040, 1991 WL 58387 (Del Ch. Apr. 16, 1991). That case correctly rejected a similar mutuality of obligation argument by looking at whether mutual obligations existed when the contract was initially formed, as opposed to the parties' modified obligations years later. *Id*. at *12. Such a rationale controls here.

In regard to Discover Bank's ability to terminate, the Court agrees that New Vision has failed to meet its burden of directing this Court to applicable Delaware case law supporting its termination argument, that no such case law was uncovered, and that Discover bank is correct in pointing to case law from other jurisdictions that rejected this novel theory. The Court credits that case law's rejection of New Vision's theory here.

Turning to the length of the contractual obligation between Discover Bank and New Vision, the Court recognizes Discover Bank's reliance on the applicable July 10, 2002 amendment to the parties' agreement. This amendment provided:

> Seller agrees to sell and Buyer agrees to buy all of Seller's right, title, and interest in and to the Accounts, which Seller identifies during each month through March 2003, subject to the terms and conditions set forth in this Agreement. This Agreement shall automatically renew for a one (1) year period, through March 2004, unless terminated by either party upon sixty (60) days written notice to the other party prior to March 31, 2003.

(Doc. # 53, Ex. 5, at 1.) New Vision's president, Fred Howard , testified at his deposition that he could not recall his company serving a timely written notice terminating the contract sixty days prior to March 31, 2003. (Howard Tr. at 186-87.) Discover Bank in fact did not terminate the

10

contract until March 10, 2003–well after the January 30, 2003 date for precluding automatic renewal–with the termination to be effective as of April 1, 2003. Thus, Discover Bank reasons, the contract automatically renewed until its March 2004 expiration. Delaware law supports such a conclusion. *See, e.g.*, *Lane v. Neudeck*, No. C.A. 00A-04-003, 2000 WL 33114372, at *5 (Del. Super. Ct. Nov. 29, 2000) (holding that, despite ongoing negotiations between the parties, a lease automatically renewed in the absence of a statutorily mandated notice of termination).

Disagreeing with this conclusion, New Vision presents essentially three arguments. First, New Vision asserts that by terminating the contract as of April 1, 2003, Discover Bank extinguished its ability to recover for the subsequent period because the parties were no longer in a contractual relationship. New Vision cites to the terms of the contract itself and to two cases to support its argument.

The contract indeed permits Discover Bank to terminate the agreement early upon New Vision's breach, but this does not as New Vision suggests terminate Discover Bank's ability to seek relief for the entirety of the contract term. Discover Bank's citation to *Farnsworth on Contracts* is well taken and highlights the well-settled proposition that an injured party can terminate a contract and seek damages for the balance of the breaching party's performance under the entirety of the contract. The contract terms here simply reinforce this approach, and to conclude otherwise would be to reward New Vision for its breach by enabling them to evade their obligations.

Nor does New Vision's citation to Delaware case law aid its argument. New Vision relies upon *Tanner v. Exxon Corporation*, No. 79C-JA-5, 1981 WL 191389 (Del. Super. Crt. July 23, 1991), but that case is distinguishable. *Tanner* states that "Delaware law does not allow

11

future profits as damages for a period beyond the termination date of the contract sued on since termination automatically extinguishes the relationship between the parties." *Id*. at *3. But the damages at issue in *Tanner* were for a period *beyond the period of the lease involved*–it terminated by expiration of its duration, not by early termination–whereas the disputed portion of the damages in the case *sub judice* target the period of the agreement's life had New Vision not breached and enabled Discover Bank's termination. *Id*. at *1 (explaining that contract was a lease running "for a period of 25 years ending August 26, 1978," the date the contract terminated).

The second case upon which New Vision relies proves similarly unhelpful to their cause. In *J.E. Rhoads & Sons, Incorporated v. Ammeraal, Incorporated*, 1988 WL 32012 (Del. Super. Crt. Mar. 30, 1988), the Delaware Superior Court addressed a situation in which a party breached a contract by sending the other party a notice of termination after a pre-end -of- year ninety-day period for termination had passed. The contract had therefore automatically renewed for another year, and the court held that the plaintiff's "future profits" damages were limited to the contract period had it not been terminated improperly, i.e., the next year (in addition to possible incidental and consequential damages that might extend beyond that year). *Id*. at *8-10. That set of facts is inapposite to the facts of the instant case where Discover Banks seeks damages for the period of the contract.

Second, New Vision also argues that it served written notice of termination in a November 20, 2002 letter, thereby terminating the contract as of March 2003. This letter provided in relevant part:

> At this time New Vision Financial, LLC will not be able to make a purchase from

12

> Discover Bank in the month of November 2002, due to extenuating circumstances. This purchase may, ay Discover Banks['] discretion, be added to the end of New Vision Financial, LLC forward flow contract, which is scheduled to terminate March of 2003.

(Doc. # 53, Ex. 6, Nov. 20, 2002 Howard Letter.) Undercutting New Vision's interpretation of this letter is that New Vision's president–who signed the letter–did not characterize the letter as a notice of termination. (Howard Tr. at 183, 187.) Also arguably undercutting the favorable interpretation New Vision now suggests is a March 10, 2003 letter from New Vision to Discover Bank in which New Vision suggests that it "may be able to make a purchase in the month of April 2003," which would have been beyond the agreement period if New Vision had indeed terminated the contract. (Doc. # 53, Ex. 6, Mar. 10, 2003 Howard Letter.)

Third, New Vision contends that during a telephone conversation, the parties entered into a valid oral agreement that canceled the renewal term. The parties' negotiations alone cannot automatically serve to vitiate the automatic renewal term under Delaware law, as evinced in the aforementioned *Lane v. Neudeck*. Despite New Vision's attempt at distinguishing *Lane*, this Court regards the distinction between the cause of the automatic renewal ultimately immaterial; whether by contractual provision or statutory mandate, the simple fact that negotiations occurred could not serve to defeat renewal in *Lane* and will not serve to defeat renewal of the agreement here.

This does not mean that renewal necessarily occurred here, however. To support its claim that an oral agreement to disregard the automatic renewal provision had occurred, New Vision points to a February 28, 2003 e-mail from New Vision to Discover Bank that stated that "in our recent telephone conversation, it is the position of both parties that there will be no

13

automatic extension of the existing contract." (Doc. # 55, Ex. 16, Feb 28, 2003 E-mail; Doc. # 63, Ex. 4, Feb 28, 2003 E-mail.)  There is certainly evidence contradicting this suggestion of an oral agreement, and Discover Bank denies any such agreement .  (Moore Tr. at 82-3, 89-90.)

Discover Bank also directs this Court to the parties' written agreement, which provides that "[n]o change or modification of, or waiver under, this Agreement shall be valid unless it is in writing and signed by duly authorized representatives of Seller and Buyer" (Doc. # 53, Ex. A, Agreement § 13.9, at 16).  No such written agreement signed by both sides has been produced or suggested to exist, and New Vision's curious suggestion that the February 28, 2003 e-mail served as proper *timely* written notice of termination is as wholly unfounded as the e-mail "notice" was untimely (coming just over 30 days before renewal as opposed to the 60 days contemplated by the agreement).  (Doc. # 70, at 3.)

Additionally, Delaware law provides:

> Any amendment to a contract, whether written or oral, relies on the presence of mutual assent and consideration. ... Delaware courts define consideration as a benefit to a promisor or a detriment to a promisee pursuant to the promisor's request.  Past consideration, as opposed to true consideration, however, cannot form the basis for a binding contract.  A party cannot rely on a pre-existing duty as his legal detriment in an attempt to formulate a contract.

*Continental Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1232, *reargument denied*, 2000 WL 268297 (Del. Ch. 2000).  Although disfavored, a specific and direct oral agreement to ignore an aspect of the written contract can nonetheless be enforceable.  If the parties indeed agreed to such an arrangement (despite Fred Howard's curious failure of recollection) wherein the contract would terminate, Discover Bank would not enforce its right to renewal or pursue legal remedies, and New Vision would pay Discover Bank a negotiated sum, then there would be no ability to

14

now recover for the renewal term here. Necessarily crediting the evidence, there is thus a factual dispute over the purported oral agreement–a genuine issue of material fact–that ultimately precludes summary judgment here on the issue of liability for the post-automatic renewal term.

Having found that no reasonable juror could reach any conclusion but that a valid pre-automatic renewal contractual obligation existed and that New Vision breached that contractual obligation, the Court next turns to the issue of damages. As noted, New Vision contends that Discover Bank cannot prove this third element of its breach of contract claim.

New Vision argues that because Discover Bank has failed to produce evidence as to what its in-house recovery department did with all its past-due accounts for the time period of the original contract term, "[i]t is entirely possible that Discover Bank actually received more revenue during the months in question that it would have had if it sold the accounts to New Vision." (Doc. # 66, at 8.) In other words, New Vision is alleging that despite producing evidence of accounts sold to companies like New Vision, Discover Bank is hiding the ball in regard to any accounts it retained ownership of and either referred to traditional collection agencies or attempted to collect itself.

Discover Bank in turn has produced evidence suggesting that it has incurred over $1.0 million in damages. (Docs. # 53, 56, Ex. 14 (under seal)). The company directs this Court to Delaware case law that supports the general proposition that a party need only prove its damages to a reasonable degree of certainty to prevail in a case. This Court agrees. The Court does not agree that such case law invariably means that a party is entitled to summary judgment, but New Vision has failed to produce any evidence that Discover Bank's figure is incorrect. Rather, New Vision relies upon speculation to proclaim that Discover Bank cannot prove damages. New

Vision's suggestion of a "[l]ikelihood that Discover Bank has actually suffered no damage at all" is an insufficient basis to create a genuine issue of material fact. (Doc. # 66, at 8.)

New Vision also asserts that because Discover Bank has failed to act reasonably in mitigating its damages, "it is barred from recovery as a matter of law against New Vision." (Doc. # 66, at 10.) The Court agrees that as a general principle, a plaintiff in a breach of contract action must act to mitigate its damages. The Court also agrees that the issue of mitigation remains a trial issue. Assuming *arguendo* that there is a duty to mitigate, Discover Bank may ultimately recover nothing if indeed it incurred no actual damages or failed mitigate.

There are also no facts suggesting an apparent waiver of damages on the part of Discover Bank, as evinced in the Robert Deter e-mail to New Vision, which continued to seek funds for the renewal term. (Doc. # 63, Ex. 3, Feb. 26, 2003 E-mail.) Equitable estoppel cannot apply here in regard to the post-July 2002 amendment period because there are simply no facts supporting the contention that Discover Bank had acquiesced to New Vision's breach during this period. New Vision's argument to the contrary ignores both that prior breaches resulted in renegotiated deals that benefitted *both* parties and that the parties undertook efforts to resolve the post-July 2002 breaches without litigation and through negotiation *without dismissing the breaching conduct*. The fact that Discover Bank had previously tried to salvage the business relationship and had repeatedly renegotiated the parties' arrangement did not mean that New Vision could reasonably breach its obligation on a monthly basis without fear of recourse.[3] Nor

---

[3] The agreement in fact states that "[n]either parties' waiver of the other party's breach of any term, covenant or condition contained in this Agreement shall be deemed to be a waiver of any subsequent breach of the same or any other term, covenant or condition in this Agreement." (Doc. # 53, Ex. A, Agreement § 13.6, at 16.)

16

is there any evidence supporting that the contention that New Vision reasonably relied on Discover Bank's unrelated dealings with third parties in making its decision to ignore its contractual obligations.

In summary, then, the Court holds that Discover Bank is entitled to summary judgment on the limited issue of whether New Vision is liable for breach of the pre-renewal period contract. Whether Discover Bank can prove that it incurred damages in light of a potential duty to mitigate remains open. Additionally, whether the parties' agreement automatically renewed remains a trial issue. Accordingly, summary judgment for either party on the issues of breach and damages for the purported renewal period is inappropriate. New Vision has apparently otherwise abandoned its boilerplate affirmative defenses that it did not address in its briefing.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** Discover Bank's motion for partial summary judgment (Doc. # 49), **DENIES** New Vision's motion for partial summary judgment (Doc. # 52), and **GRANTS** Discover Bank's requests for leave to amend its complaint and to reopen discovery (Doc. # 49). Given this decision, the Court **DENIES WITHOUT PREJUDICE** the now premature motions *in limine* (Docs. # 71, 72, 73) and **VACATES** the September 19, 2005 trial date. Counsel should be prepared to discuss proposed deadlines for adjusting the case schedule at the August 3, 2005 final pretrial conference, which is now converted into an in-chambers status conference.

**IT IS SO ORDERED.**

    /s/ Gregory L. Frost
GREGORY L. FROST

                              UNITED STATES DISTRICT JUDGE